GRIFFIN, J.
Audrey Brooks [“Brooks”] appeals her judgment and sentence for organized fraud in excess of fifty thousand dollars, entered after the trial court revoked her probation. She contends that the trial court erred by revoking her probation because there was insufficient evidence to support the trial court’s finding that she had the ability to pay restitution and willfully refused to do so. We agree and reverse.
On February 10, 2009, the State charged Brooks with one count of organized fraud of $50,000 or more in violation of section 817.034(4)(a)(l), Florida Statutes. Thereafter, Brooks entered a plea of guilty. *966 The trial court withheld adjudication and placed Brooks on probation for a period of thirty years. As a special condition of the probation, the trial court ordered Brooks to pay $130,000 in restitution to Beta Max, Inc. c/o Tami Hamilton, to be paid at a minimum rate of $550 per month and a $10,000 payment within six months.
On July 1, 2010, the State filed an affidavit of violation of probation, stating in part that Brooks had failed to make restitution payments as directed by the trial court and that she was $1,100 in arrears. A hearing was held on October 7, 2010, after which the trial court entered an order dismissing the violation of probation, and reinstated Brooks’ probation with the same terms and conditions as previously ordered.
The State filed a second affidavit of violation of probation on November 29, 2010, stating:
Violation of Condition (b) of the Order of Probation, by failing to make restitution payments to the clerk of court as directed in accordance with the payment instructions of the court, and as grounds for belief that the offender violated her probation, Officer Ingram states the offender is ordered to pay $10,000[.]00 within six months from 5-14 — 10[.]
The violation report, filed on the same day, provides in part:
(1) HOW VIOLATION OCCURRED
On 5-14-10, the offender was sentenced to probation and ordered to make restitution payments at a rate of $550[.]00 per month with an additional $10,-000[.]00 to be paid within six months from her sentencing date through the Brevard County, Florida Clerk of Court[.]
On 5-19-10, the offender was instructed on her conditions of probation by her probation officer and did sign Court orders understanding her conditions concerning probation!.]
According to the Brevard County Clerk of Court website by using the offender’s case number, the offender has paid a total of $2,425[.]00 towards her restitution payments during the period of her probation!.]
The offender is unemployed at this time, no monthly income!.]
(2) OFFENDER’S STATEMENT
The offender informed the probation officer that she would try and get the money from her family members to make the $10,000[.]00 payment towards restitution!.]
On February 27, 2011, the trial court conducted a violation of probation hearing. At the hearing, Brooks and the State discussed the condition of probation under which Brooks was to make a $10,000 payment within six months:
Q. One of the conditions of that probation as you will recall was that you were to make a Ten Thousand Dollars payment to the Menyons (phonetic spelling) within six months of that plea date, do you recall that?
A. That is correct.
Q. And I think what’s important is that do you recall the Court asking you specifically about being able to do such a thing, make that Ten Thousand Dollar payment?
A. That is correct.
Q. And isn’t it true that you told the Court and your attorney at that time that is of record that, yes, you would make a Ten Thousand Dollar payment within six months?
A. That’s correct.
Q. And you haven’t done that, have you?
A. That’s correct.
*967 Q. Now, the outstanding balance that you owe to the Menyons is One Hundred and Thirty Thousand Dollars less approximately Twenty-five Hundred Dollars that you have paid, is that fair?
A. That’s correct.
Upon further questioning, Brooks testified that she had been in school prior to her arrest for the violation of probation, and had recently obtained a commission-based position with the Orlando Sentinel. She said that, since the previous violation hearing, she had attempted to liquidate assets and had attempted to seek assistance from her family. When asked where the stolen money had gone, Brooks explained: “A lot of it was spent on myself, my children, bills, also had a car that was seized by the police department....” When asked to be more specific about what it is that she spent the stolen money on with respect to her children, Brooks said: “Food, clothing, shelter, things like that.”
Further, Brooks explained that she had intended to pay the restitution by getting a job. Brooks stated that while she had been in school, she had been employed with GSI Commerce in Melbourne, earning between $320 and $400 per week. She explained that she told the trial court that she could pay the $10,000 within six months because she had a job at the time.
On cross-examination, Brooks testified that she was not presently working, but was seeking employment, and she had three children living with her. She supported her family through SSI and child support, totaling $1226 monthly. Brooks testified that she had paid towards restitution, that she was trying to pay the required amount, and that she made a lump sum payment in October, which came in part from her daughter and in part from her student loan.
In support of violating Brooks’ probation, the prosecutor argued in part:
Judge, the ability to pay I believe is a duty that is incumbent upon that person to come forward and show she has— does not have that ability to pay and I don’t believe she’s met that burden by her testimony here today.
Here’s a Hundred and Sixty Thousand Dollars and I don’t believe there’s a person in this courtroom, Judge, that wonders how could you spend that kind of money and not have something left. It sounds absurd and as a consequence I find her testimony incredible and I would ask that you find that she has the ability to pay based on those circumstances.
On the other hand, Brooks’ counsel argued in part:
Your Honor, the State’s got a burden here of proving that she willfully and substantially violated her probation (inaudible) in this case evidently has some resources that she could hand over to probation to pay for the restitution. There’s no evidence at all she had resources. I know there was a bunch of money at some time, but the question is is there any money now, does she have access to. Nothing. I would argue that the State has not proven she willfully and substantially violated her probation.
The trial court found:
All right. The allegations — underlying allegation are that between 4/8 and 10/8, so six month period of time, the allegations were stealing a Hundred and Eighty Thousand Dollars, Hundred and Sixty, I’m not sure, ultimately it was stipulated to be a Hundred and Thirty Thousand I believe.
She was arrested December of '08. So, between April '08 when the thefts started to the end of '08 a Hundred and Thirty plus Thousand Dollars was dis *968 posed of. I frankly never believed her when she said that she doesn’t know where it went. I think she’s just decided she is going to try to hold on to it and suffer the consequences of holding on to it.
She told us that she had Ten Thousand, she could come up with Ten Thousand Dollars, nothing’s changed and that as well, I do find a willful and substantial violation.
At that point, Brooks’ counsel asked: “Has the Judge found that she has the resources but isn’t bringing it forward?” The trial court responded:
Yes, sir. I also find she’s not diligently sought employment which is not an allegation but had she done so she would additionally have the ability to pay, but primarily she stole a Hundred and Thirty to a Hundred and Eighty Thousand Dollars and she’s decide [sic] that she’s going to hold on to it, at least a major portion of it.
The trial court then revoked Brooks’ probation, adjudicated her guilty, and sentenced her to five years in the Department of Corrections, followed by twenty years of probation with the same conditions as previously imposed.
As recently as last year, the Florida Supreme Court addressed the problem of violation of probation for failure to pay restitution. Del Valle v. State, 80 So.3d 999 (Fla.2011). Section 948.06, Florida Statutes (2009), places the burden on the non-paying probationer to prove inability to pay by clear and convincing evidence. Most of the intermediate appellate courts had concluded, however, that the State is obliged to carry the initial burden of proving willful failure to pay. The Florida Supreme Court said:
These cases present two separate questions of law regarding probation revocation for failure to pay restitution: (1) whether a trial court, before finding a violation of probation for failure to pay restitution, must inquire into the probationer’s ability to pay and determine whether the failure to pay was willful; and (2) whether the burden-shifting scheme of section 948.06(5), Florida Statutes (2011), which places the burden on the probationer to prove his or her inability to pay by clear and convincing evidence, is constitutional. Regarding the first issue, the underlying constitutional principle is that an indigent probationer should not be imprisoned based solely on inability to pay a monetary obligation. Based on our fidelity to this principle, we approve the holdings of all the district courts of appeal, except the Third District, that before a trial court may properly revoke probation and incarcerate a probationer for failure to pay, it must inquire into the probationer’s ability to pay and determine whether the probationer had the ability to pay but willfully refused to do so. Under Florida law, the trial court must make its finding regarding whether the probationer willfully violated probation by the greater weight of the evidence.
As to the second issue, an automatic revocation of probation without evidence presented as to ability to pay to support the trial court’s finding of willfulness violates due process. Accordingly, the State must present sufficient evidence of willfulness, including that the probationer has, or has had, the ability to pay, in order to support the trial court’s finding that the violation was willful. Once the State has done so, it is constitutional to then shift the burden to the probationer to prove inability to pay to essentially rebut the State’s evidence of willfulness. However, while it is constitutional to place the burden on the probationer to prove inability to pay, the aspect of sec *969 tion 948.06(5) that requires the probationer to prove inability to pay by the heightened standard of clear and convincing evidence is unconstitutional.
Del Valle, 80 So.3d at 1011. (footnote omitted).
In light of Del Valle, the trial court’s decision must be reversed. The State failed to present sufficient evidence to support the trial court’s finding that Brooks’ failure to make the $10,000 payment was willful. Brooks testified that she had spent all of the fraudulently-obtained money on food, gas, clothing, transportation, and rent. The trial court did not find Brooks credible with respect to her testimony about her expenditure of the stolen money, but the State did not present any evidence that Brooks held or had access to any of the money that she had stolen, or the assets that /she had purchased, or that these could not have been dissipated. We recognize that the burden placed on the State is hard because the facts are peculiarly within the knowledge of the probationer, but the State will have to expend its resources to discover the truth if it wishes to show that Brooks has income or retains assets that should be restored to the victims before Brooks’ probation can be violated based on her failure to pay restitution. We reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
TORPY and LAWSON, JJ, concur.